In the matter of Linn Energy, Oklahoma State Treasurer v. Linn. Good morning. May it please the Court. Why don't we wait until things settle down a little bit, Ms. Tomasco. Okay, there you go. Thank you. Once again, good morning. May it please the Court. This is an appeal from a district court imposing a constructive trust on an appeal from the bankruptcy court that granted a 12B6 dismissal. And I think that that can't be lost at any point. Linn Energy operated 27,000 wells in 12 states. That's 12 states that all got notice of the filing of the voluntary petitions on May 11, 2016. There was a bar date, November 7. There was a service list that's in the record that's 7,000 pages long of single lines, including all unclaimed property holders. Of those 11 states, Texas had a pre-petition unclaimed reporting date. Eleven states had post-petition reporting dates under their unclaimed property laws. Only Oklahoma believes that it has a viable claim. The district court ignored the most important fact of this case. Oklahoma filed six proofs of claim under penalty of perjury. And for those who may not know, a claim under 502B of the bankruptcy code is filed under penalty of perjury and indicates a right to payment determined as of the petition date. The Oklahoma UPL has a reporting and payment date of November 1 of each year, and there's no question that the UPL had been paid by Linn every year prior to the petition date. The three most important parts of the record inform the three most important cases that decide this case. If the court reads nothing else, the court must read the six claims filed under oath by the treasurer. I have a copy with me here. Those can be found at record 1719, 1781, 1843. Wait a minute. 1719, 1781. 1843, 1723, 1785. They filed a claim as a general unsecured creditor. Is that the point? Yes, Your Honor. And it goes beyond that. There's a specific form that's attached to each of their claims, not just the first set of claims, but also the claims that they filed after the confirmation of the plan. This is the exhibit, and if you look at it, the form says, in categories 2B through 2F below, claimant is a general unsecured creditor. They say if the unclaimed property takes the form of stocks or dividends, they would assert a trust. In contrast, in categories 2B through 2F, including miscellaneous checks or unclaimed obligations into which unclaimed royalties would undoubtedly fall, they say only that it is an unsecured claim. So not only do they say it's an unsecured claim by exclusion from category 2A, they're also saying there's not a trust. That's so important because during the pendency of a bankruptcy case, the debtor is relying on its claims roster to figure out how it settles all of its debts. Well, basically you want to take, what did the plan do with this nearly million dollars that would have been unclaimed property under Oklahoma law? The plan did two things. One thing that the plan did is that it said accrued royalties are treated as general unsecured claims, which should have been of no moment to Oklahoma because they filed their claim as a general unsecured claim. I just want to know the bottom line. What does the plan do with that million dollars? In other words, the people for whom it is a trustee under most states' law, I guess, don't get anything, whereas otherwise they would have had a, what is it, tangible right to the money that had accrued in royalties, correct? Oklahoma law does not recognize a trust claim in the oil and gas lessor. Texas does, right? Texas does not. You're litigating with Texas, right? We litigated with Texas over the unclaimed property. Texas has an unclaimed property statute that they enacted a couple of years ago where it says on March 1 of each year, which is also the record date for reporting unclaimed property, Texas has a statute that says the holder, Lynn, holds it in trust for the benefit of the state of Texas for the unclaimed property holders. Oklahoma has nothing similar at all. There is no trust-like statute at all with respect to unclaimed property, and there is no trust statute at all with respect to oil and gas lessors with accrued royalty claims. There's nothing in the statute. I thought they said that oil and gas producers hold the shares owed to, you know, I thought that was general law. No, it's not the law. The Oklahoma Production Revenue Standards Act has a provision. It's statute 570.10a. It says proceeds from the sale of production shall be regarded as separate and distinct from all other funds. And the part that was omitted by the district court that was so critical at the last sentence of that statute, nothing in this subsection shall create an express trust. So there's three cases that have interpreted that exact statute. One is Gaskin v. Texon, which is at 321P3rd987, and it says specifically there is nothing in that language requiring the imposition of an implied trust, no express trust, no implied trust. They relied in turn in that case on Samson v. Simcrude, which was a 407BR140D Delaware 2009. Because the PRSA requires operators to pay interest to owners at specified rates and otherwise has common commercial terms, the court finds the statute concerns a debtor-creditor relationship and does not impose a trust relationship. Didn't you argue all this to the district court? The district court was the one that cited the Oklahoma PRS. I understand that. I mean, I'm just asking if this is so obvious. I was under the misimpression, maybe I read the briefs a little too quickly, but I was under the impression that Oklahoma was claiming some sort of trust, that your company is the legal owner but has only bare legal title and beneficiaries are the equity owners of it. And I thought that was what the district court ruled on, and that's why I'm asking how come the district court got it so wrong. Why the district court got it so wrong is the district court cited cases that were not cited by Oklahoma, I mean statutes specifically, and went through the litany of the statutes. Oklahoma relied primarily on taking cases out of the debtor's own mineral payments motion, which of course deals with 12 states and 15 different types of oil and gas interests, picks up little phrases, you know, headnote research type of citations to that motion, and then weaves in a sort of we want the court to find, declare that it wasn't property of the estate, but he never pled below in the original complaint, he never pled for a trust. He didn't go through the elements of a trust. He didn't cite facts to support a trust. So you're both a little bit sloppy to begin with because they do say that the mineral payments motion that Lynn filed, I'm just trying to reach where the facts go here. The mineral payments motion that Lynn filed said they are outside the scope of it, that unclaimed property is outside the scope of estate property. And they do cite two or three of the filings that the debtor made that said this is outside the scope of estate property. I have two things to say about that. One, we have the claim. The Oklahoma claims. I know we have your claim and we have their claim and we have what you did, and you're both inaccurate is basically what you're saying because you're not, I don't hear you defending the mineral payments motion. I can defend the mineral payments motion. That's what I was asking you about. As I said, the mineral payments motion was a first day motion, not unlike a critical vendor motion that asked to pay things arising in the ordinary course of business and gives a variety of justifications why those creditors would not be among the general unsecured creditors and even if they were, that the payment was critical to the ongoing business. The fact that they recite various cases. I know what a first day motion is, but what are you saying? What was the implication of that for the unclaimed property, which the debtor said was outside the estate? Did that mean they were paying it? It meant that they had the authority to pay it, but they would only pay it if they had a genuine legal basis to pay it ahead of unsecured creditors. Now, two things about the mineral payments motion. It doesn't talk about unclaimed property. There is no mention in the mineral payments motion about unclaimed property, and how is it that the— Well, it referred to something about the states, didn't it? No, it did not. You know, I thought this case was about whether the claim of Oklahoma was barred by the plan under 1141 or res judicata and the claim of Oklahoma that their claim was jurisdictional and it shouldn't be governed by those rules. I mean, what's your answer to what I think is the main issue on the field? Well, the main issue that we have on appeal is that the plan was res judicata as to property of the estate, and property of the estate includes both legal and equitable interests, unless that equitable interest is shown in a procedure in front of the bankruptcy court to require payment outside the terms of the plan. Well, why can't that be decided after the plan is confirmed? Because the plan is res judicata and the property is— I mean, you adjudicate claims after the plan is—I mean, you know, people have to vote, and Oklahoma didn't vote, as it turned out, but, I mean, normally you adjudicate. Suppose the debtor—you know, I started bankruptcy with Braniff Airways, and at that time the Braniff headquarters behind what is DFW Airport had a remarkable collection of 19th century—20th century paintings, Picassos and Monets and all that kind of stuff. But suppose that had been on loan from Harding Lawrence, the president's personal collection, and therefore Braniff was a trustee for—and I'm—please excuse me if my analogy isn't good. I'm just trying to be colorful. But suppose the debtor is the trustee for property. That means it holds legal title but not equitable title. Can the plan transform bare legal title into equitable title, which is essentially what you're claiming it has done? It can because it's the same as vitro and other cases that say that a creditor who participates in the bankruptcy and who doesn't object to a plan that extinguishes their lien, the plan is also res judicata as to that. If a party comes in and gets a ballot, as Oklahoma did here, it characterizes their claim as 6A, unsecured. And that reference is 4238 and the plan 11398. It was clear in absolute notice to Oklahoma that it was being treated as a general unsecured claim. And what standing does Oklahoma have to stand in the shoes of the mineral payment holders because it is acting as a state qua state, not in parents patriate? Well, let me—I mean, that's certainly another issue. But just back on the trust thing, and I'm well aware of traveler's insurance and the res judicata. But it just seems to me that if it's something that— suppose somebody had dropped a diamond necklace at the company headquarters and then suddenly realized that the diamond necklace was in the possession of the debtor and the debtor put it in a safety deposit box and then files the plan and says, here's—this is all being adjudicated. It's not your contention that the diamond necklace would be gone by operation of the plan, is it? That the owner would have no— If there was clear notice in the plan that that's what the debtor was going to do and somebody didn't object. But the more important point is the minerals once severed from the ground were the debtor's property. They weren't the lessor's property. So that cuts back to the trust aspect. So, right. And there is no trust under Oklahoma law. It's clear as day under Gaskin and under Simcrude, under all of the statutes that are cited by the district court, that there is no trust relationship. Ownership was in the debtor. The plan cut off any possible constructive trust. And if it couldn't imagine the policy implications of such a ruling, if I just determined that I think that I have a constructive trust, does that mean I get to violate the stay? Or do I have to come into bankruptcy court before the plan is confirmed to assert that right? That's what we're saying. And even if it had been asserted, it would have been a loser. They had no right. They are claiming under their unclaimed property statute not as a mineral holder. That's an important distinction here. They don't have standing to raise the priority or liens or trust-like claims of a royalty holder. They are coming in and claiming clearly in their claim under the unclaimed property statute as an unsecured claim. What more could Lynn have done to ferret out the fact that they thought they had something more?  You have time for rebuttal. Thank you. Mr. Sparks. May it please the Court, Jacob Sparks for the appellee, the Oklahoma State Treasurer. Speak up. Speak up. Whether the unclaimed property was property of the debtor's bankruptcy estate is a threshold question here. If the Court determines that the unclaimed property was not property of the debtor's estate, then the Court doesn't need to address Ray Stuttakata or the debtor's preemption argument. The plan only dealt with the debtor's property. If the property of the unclaimed property holders was not the debtor's property, which it was not. Well, the problem is that you raised that timely so that the Court could have ruled on that before a final judgment was rendered. That's the problem. And as I understand it, you say that the Court didn't have jurisdiction to deal with property that wasn't property of the estate. And then we've got the Travelers v. Bailey case. So let's talk about that issue for me. I mean, is that your position, that the bankruptcy court didn't have jurisdiction to deal with the property because it was not property of the estate? I'm not sure that it is. The argument is that they didn't have, the bankruptcy court doesn't have jurisdiction. The bankruptcy court does not have power to take someone else's property. Power and jurisdiction, when we speak in a court, is pretty much the same, isn't it? Yes, Your Honor. But the bankruptcy court cannot take property that does not belong to the debtor, whether the plan provides that or not. So— Well, you've got a debtor, a creditor that files an unsecured claim, general unsecured claim. And so the bankruptcy court had the power to deal with that, didn't it? It did, Your Honor. But the bankruptcy court did not rule on that because after the debtor objected to the treasurer's claim, that's when the treasurer filed the adversary proceeding, and that's why we're here today. Yes, but— That was way down the road after the court had entered judgment on the plan. Well, but Oklahoma filed it as an unsecured claim. Oklahoma, the State of Oklahoma did file an unsecured claim before it was represented after receiving notice of the bankruptcy. And the claim said that the property was being held in trust and that it was subject to the state's custody. Now, she says that there's no such thing as this trust claim. Well, if the property is not property of the debtor's bankruptcy estate, then I don't know that we need to deal with the equitable remedy of a trust, although I certainly think that would be— Sorry, that the producer, Lynn Operating, is not the trustee for unclaimed property. Under the statute cited by the district court, in its opinion, all proceeds from the sale of production shall be regarded as separate and distinct from all other funds. Any person holding revenue shall hold the same for the benefit of the owners legally entitled thereto. The statute does say that there's not an express trust, but it says there's not an express trust. It doesn't say there's not an implied trust, a constructive trust, a resulting trust, any other kind of implied trust. Isn't that provision relating to royalty owners? It's related to the sale of production, and the unclaimed property of interest here is mineral interest proceeds. Oklahoma was claiming this money for its own treasury, wasn't it? No. Under the unclaimed property laws, Oklahoma has a right, a sovereign right, to enact escheat laws, and it enacted that sovereign power through the Oklahoma Unclaimed Property Act, which gives the treasurer custody, the state custody, and it's administered by the treasurer. But then the way those things work, though, is the state publishes notice, and you can go to lists because the state doesn't actually—the property doesn't escheat for several years normally, right? That's right, and under the Oklahoma statute is a custodial statute, so the state is entitled to custody of this property. And according to the Supreme Court in Delaware v. New York, funds held by a debtor become subject to escheat because the debtor has no interest in the funds, precisely the opposite of having a claim to the funds. But, I mean, holding for the benefit is not all that different than the relationship that a bank has with a depositor in the bank, and a depositor in the bank is a creditor. It's a debtor-creditor relationship, so why is this relationship that you're talking about any different than a debtor-creditor relationship between Lynn and the royalty owners or working— Well, the debtor admits in their brief that it had this property on the petition date. It was holding the funds in its bank account. We also can see that in the statement of financial affairs that acknowledged the debtor was holding $54 million in mineral interest proceeds. So we're looking for the property. We're looking for delivery of the property. But that begs a question because it seems to me you're now defining your claim in such a way that it doesn't differ from any other royalty owner's claim. Well, to the extent that the debtor was holding somebody else's property that the debtor did not own, that is the other— So the debtor paid off all the royalty claims as of the date of bankruptcy? I do not believe— One hundred percent? No, of course not. Well— And besides that, even if it were a trust, it's not—money is fungible and it wasn't segregatable and so on. So it's still debtor-creditor. Well, Your Honor, the funds are traceable. And under this Court's precedent, when money is held in a trust, you apply the lowest intermediate balance test. This account had $54 million on the petition date. We're only looking for about $1 million. And those funds—my client's position is that the debtor is holding the property itself, and that property should be delivered. We are not asserting an in personam liability against the debtor. We're looking for delivery of property, of mineral interest proceeds. I know exactly what you're looking for, and I'm trying to understand why. I mean, when I understood—you know, you filed a claim in a Chapter 11 proceeding, a general unsecured claim. And the proceeding goes on, and it comes—they send out a ballot to you as a creditor to vote. You know, we're properly characterizing your claim as a general unsecured claim, and they get no response. The bankruptcy court approves the plan and then enters a judgment on the plan. Why doesn't that resolve it? Well, Your Honor, the debtor objected to our claim, and that's why we're here today. No, that's after confirmation. That's correct, Your Honor. I mean, and I don't really disagree with that. I mean, you often adjudicate claims after confirmation, but I do sort of think it's inconsistent with your position to have filed all these ongoing general unsecured claims and then get a ballot in that capacity because what you should have done, I believe, was if you really felt that you were in a different position than an unsecured creditor, was object to the characterization of the claim and demand to be put in a separate class for purposes of voting. That would have put him in a stiff swivet. It would, Your Honor, and with the benefit of hindsight, we would have objected earlier. I'm sure my client would have hired counsel earlier. But the debtor filed a report with the state of Oklahoma in November of 2016 disclosing $965,000 in unclaimed property that was subject to turnover by the state. Until my client received the claims objection, it was not aware that the debtor had chosen this case to litigate this issue and to challenge state unclaimed property laws. You don't challenge that you got notice of the ballot and the notice of the right to vote on the plan? No, Your Honor, we're not challenging that. Judge Jones knows a lot more about bankruptcy law than I do, but I thought the claim process after the plan is confirmed is you've got all these claims that are listed, and then there's a determination of what's allowable out of those claims. And so the debtor then gets the opportunity for the first time to challenge the merits of the claim. You can't go back and say, well, the plan shouldn't have characterized it the way it did. That's my understanding. Is that your understanding? Well, Your Honor, I don't believe that the plan plainly characterized this property as property of the debtor's estate. I believe that the plan and the confirmation order contain explicit carve-outs. The confirmation order says, notwithstanding anything to the contrary in either plan or the confirmation order, the reorganized debtors shall operate their business, properties, and assets in compliance with any applicable federal, state, or local laws and regulations. So under the terms of the debtor's plan, they were required to comply with the Oklahoma Unclaimed Property Act. So we don't believe that there's any race judicata effect when the plan expressly and notwithstanding anything to the contrary gives the treasurer the right to continue enforcing its S.C.E.A.T. laws. And the plan says not— Repeat that again. What provision gave the treasurer the right to challenge what was agreed to in the plan? There's a provision in the confirmation order and one in the plan. I just quoted the confirmation order, which is notwithstanding anything to the contrary in either plan or the confirmation order, the reorganized debtors shall operate their business, properties, and assets in compliance with any applicable federal, state, or local laws and regulations, which is also what 28 U.S.C. 959 says, that a debtor in bankruptcy is required to operate in compliance with state law. And the plan says, notwithstanding anything to the contrary herein, nothing in the plan or confirmation order is intended to affect the police or regulatory activities of governmental units or other governmental agencies. But that means I ought to know this. Is the company still in business? The reorganized debtor is in business. Debtor is still in business. Well, then that means that going forward it's going to pay the unclaimed property, right? What else does it mean? Well, I believe, Your Honor, that because the debtor has no property interest in this unclaimed property because it's simply holding property that belongs to other people, it means that it's going to remit that property to the State. I mean, do you have what you say for the first time the debtor is going after unclaimed property laws? Now, I assume Oklahoma has to deal with a number of these kinds of cases. And why are you saying, does Oklahoma normally and as a matter of routine get paid by debtors in possession for unclaimed royalty or interest payments? My client tells me, Your Honor, that they believe this property was being turned over regardless of the bankruptcy. Well, I don't care what they believe. You mean that? I mean, you don't cite anything for that. There's a Supreme Court case called Kovacs that says that a governmental unit reduces its claim to a money claim. They're a creditor like everybody else. And I think we've got even cases saying that that provision in the stayover context relates to safety and health regulations. So what authority do you have? Well, in Kovacs, Your Honor, Kovacs was ordered to clean up the property, but a receiver was appointed who divested Kovacs of all of his assets, took all of the authority that he had, and then the receiver was in charge of cleaning up the property, and the receiver tried to collect money from Kovacs. And the court said that's a claim. That's not the situation that we're in because the debtor has possession of the property that we are seeking to have delivered to the state. If I can envision some situations potentially where, you know, we were in a very different procedural posture and the state of Oklahoma had sued the debtor to recover property that had not been turned over, that the debtor had not segregated, and we're looking for interest and penalties, and the state. Claiming $1 million out of $54 million owed to 12 or 15 separate jurisdictions doesn't seem to me particularly segregated. It would be more helpful to give you a case rather than what you can envision. I'm not aware of a case, Your Honor. I mean, but they do state that rule, and I mean I understand that the facts are different, but why isn't that generally the rule that when a state has a claim or a state converts whatever it has, a penalty or whatever it is to a money judgment or money claim, then they come into bankruptcy a predator like everybody else? Yes, Your Honor, that's generally true, but I'm representing a state that has enacted its sovereign power over property through SG laws, and according to the Supreme Court, a debtor holds no property interest in those funds. And according to the Supreme Court, a debtor cannot distribute other people's property to its creditors, which is another reason why this race judicata argument fails. The debtor is saying, I can do anything through a plan of reorganization. Are you talking about the Perlman case? Yes, Your Honor. And that was in 1920, 1962, but I think Perlman. Perlman. And there's also Begier v. IRS, although that case dealt with the ‑‑ But again, what do you do with the traveler's insurance case? Well, Your Honor, I don't believe it applies because we're dealing with a state's sovereign power over property located within that state, and the debtor has no equitable interest in the property here. Well, is it a sovereign power or is it a trustee for other people? You're saying it's just a trustee. I see those as two separate questions, Your Honor, because if this is not property of the bankruptcy estate, we don't have to impose a trust on the property. It's just ours. We just have to show ownership, and we can do that because ‑‑ It's not Oklahoma's. Oklahoma is holding it for other people, right? Right. So if it's not the debtor's property, then the debtor cannot now have an equitable interest in the property by virtue of the plan. It is still just sitting there with somebody else's property. How is Oklahoma ‑‑ So you're saying that you have Joe Smith, who has a royalty interest in one of these wells, and they owe him two or three years' worth of back royalties for which they are trustee or something, constructive trust or something like that in a segregated fund, but he's only an unsecured creditor, whereas Oklahoma, who claims to be holding for all the Joe Smiths who never cashed their checks or never, you know, didn't have current addresses or whatever, Oklahoma has an in‑kind ownership. Is that a valid differentiation? There is a big difference between the State of Oklahoma and Joe Smith, but I believe that Joe Smith is a property owner, and the debtor is holding his funds in an account, commingled or not. That money is still there. The debtor said in his book ‑‑ Do you have any authority for that kind of proposition? Yes, Your Honor. I mean, this is a novel issue, so there are not a lot of cases from anywhere dealing with this, but if you start with Delaware ‑‑ It may be novel because nobody ever thought to raise an argument like this. That may be, Your Honor, but the other cases that were dealing with this, three of the four were decided before Delaware v. New York, and the third one was decided later that year and doesn't cite Delaware v. New York. Delaware v. New York is where the court said funds held by a debtor become subject to SG because the debtor has no interest in the funds. The debtor in this case had no ownership interest in these funds. It could not convert them to its own use. Well, Butner v. U.S. says whether the status of property is determined by state law, so whatever Delaware said vis‑a‑vis New York may apply to Delaware and New York law, but not necessarily to the statutes of Oklahoma, which are at issue here. That's correct. And you're not claiming that Oklahoma owns this property. What you're claiming is that they are holding it for the actual royalty owners, right? Yes, Your Honor. I'm saying that the debtor does not own this property, that the debtor is holding this property for the owners, and that the state is subject to possession of the property under the SG laws. Under Oklahoma law, the debtor has no interest in this property. The debtor is a holder in possession of property belonging to another. Every debtor has property that should be belonging to another person. That's the whole point of bankruptcy. Yes, Your Honor, but if you loan me a Van Gogh and I hung it in my office and had complete control over it and possession of it and then filed bankruptcy, it doesn't become mine. It doesn't become mine by virtue of a plan of reorganization or any other way. It's still your painting. And you don't have to prove a constructive trust unless I sell it, and then you've got to prove a constructive trust over proceeds. Otherwise, you just have to prove that I have your property and it belongs to you. And in the case where that became unclaimed property under a state SG law, the state is the one entitled to custody. So basically this is an exception to Traveler's Insurance v. Bailey. Yes, Your Honor. I believe so. And also, Your Honor, under the—according to the Oklahoma Supreme Court, the public policy supporting custodial taking by a state is superior to any claim that a private holder may assert in unclaimed proceeds. So under the state law in question that creates and defines the property right, the debtor has no interest in these funds, and the state's right of possession is superior. Bankruptcy law would have a little something to do about priority of payment, wouldn't it? Not when it's dealing with somebody else's property, Your Honor. The plan cannot dispose of other people's property. The debtor cannot give other people's property to their creditors. You know, in the absence, if the debtor had won the claims objection, for instance, if we had gone ahead and litigated that as an unsecured claim, then there might be a better race judicata argument here, although the property will never belong to the debtor. It will never be able to be distributed to its creditors. It's subject to SG. Thank you. All right.  Ms. Tomasco. Thank you, Your Honor. Again, I think you should look at the record at ROA 1784. The amended proof of claim filed after the confirmation were signed by Spencer Fain, the law firm that is now representing to you with the exact same attachment. It's an unsecured claim. We're not claiming a trust. They filed that same claim, and it's the only thing that we have from the State of Oklahoma that's filed under penalty of perjury. So when they say now that it was never property of the estate, then why did they file a claim? It is property of the estate. It's cash. It's not a Van Gogh. It's cash in a general operating account, and that's in the Mester Harm Declaration. You mentioned Braniff, and it triggered something that I had thought about. What if I was a tenant in a lease, I was in your shopping center, and I owed you percentage rent? A royalty works exactly like that. The fact that I owe you percentage rent on how much of my dresses I sell in my dress shop doesn't mean that a royalty gives you a property interest in the dress shop. Well, that varies under different states' law, though, doesn't it? Exactly. And so the confusion, I think, comes when people think of oil and gas in the ground belongs to the mineral estate, but once it's extracted by the producer, the producer owns it, subject to its obligation to pay royalty as its rent to the mineral estate. Well, all that's a matter of state law under Butner, right? Correct. And to the extent that anybody thinks that there is a federal common law issue here, the standards for invocation of federal common law simply aren't met. What do you say about the Pearlman case? The Pearlman case was obviously issued under the Bankruptcy Act. If you look at the Glenbrook case out of the Northern District of Illinois. What case? Hold on. It cites to the Georgia Pacific case that's issued by the Fifth Circuit, which basically is for the proposition that that case, the earlier Bankruptcy Act case, was decided under the Bankruptcy Act, and it ignores the wording of the 541D as presently enacted by Congress under the Bankruptcy Code. Also, if you look at the Fifth Circuit's decision in Georgia Pacific that's cited in the Glenbrook case, and this is all in our brief. Glenbrook? Glenbrook. These are in your brief. Yes. And it was a recently appointed bankruptcy judge, Deborah Thorne, who wrote it. It's very well reasoned because it says what should have happened here. In that case, somebody was asserting a constructive trust, and the opinion says you may assert a constructive trust, but you have to come to bankruptcy court first in order to extract that from the estate if you can prove all of that. And what happened here is there was no pleading of a trust in the original complaint filed by the Oklahoma treasurer, and there certainly wasn't one in the proofs of claim. So one could resolve this on purely procedural grounds. Yes. The motion to dismiss was a procedural motion based on the restituta effect of the plan and the fact that there had been nothing done to extract this property from property of the estate prior to the confirmation order that has several salient provisions that directly impact the viability of the cause of action. That is the discharge injunction at ROA 561, the release of liens at ROA 559, the release provision, ROA 560, the vesting provision, ROA 540, the unclaimed property provision, ROA 551, the waiver and estoppel provision at ROA 572, and the claim amendment bar provision at ROA 557. The plan could not have been to the extent that the treasurer wants to piggyback on the rights of the mineral claimants, which I suggest to you there is no basis for. There is no subrogation. There's nothing in the Oklahoma statute that gives them that right. There's nothing in the bankruptcy code that gives them that right. Bankruptcy code only recognizes subrogation if you've paid the claim. Under 509C and 502E1B. Nobody's arguing subrogation. The problem is that they're acting as if they have it without arguing it, and they just simply don't have the standing to assert the rights of third parties, and that's what's happening here. That's why they're confusing the confusion. Well, Texas has the right because you're still litigating against them, right? They had a statutory trust. On March 1, the Texas statute says a trust attaches to the unclaimed property that the record date for which is March 1. It's not payable until July 1. We argued a lot about that. I thought that provision was designed solely to upset the priorities of the bankruptcy code because that was in the legislative history. We argued about it. We settled. We didn't settle for 100 cents. Thank you, Your Honor. All right. Thank you.